IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| TABATHA MANNING, | ) | CASE NO: 8:15CV107 |
|         Plaintiff, | ) | |
| | ) | |
| v. | ) | Plaintiff's Trial Brief |
| | ) | |
| VAUGHN COTTON, an Omaha Police | ) | |
| Officer;  THEODORE DELEZENE, an | ) | |
| Omaha Police Officer, and the CITY OF | ) | |
| OMAHA, NEBRASKA, | ) | |
|         Defendants. | ) | |

Submitted on behalf of Plaintiff
WILLIAM J. O'BRIEN, NE #23740
5062 S. 108th St., #111
Omaha, NE 68137
402-201-8581
billobrienlaw@gmail.com

When Officers Cotton and Delezene charged Tabatha Manning with a drug felony in September of 2013, when she was bound over to district court after her preliminary hearing a few months later, and when assistant county attorney George Thompson prosecuted her in district court for almost a year, it was all based on this same theory: the bag of methamphetamine was found in the backseat area of the police car; it hadn't been there before she was placed in the car; therefore she must have put it there.

But Manning will testify that she didn't put it there. So if the meth hadn't been in the car before Manning was placed there, as Defendant-officers reasoned when they charged her, and she did not put it there, it had to be Cotton or Delezene that did so. No one else had been back there.

The video recording from inside the police cruiser will be introduced as evidence. It shows that Manning was not moving in a way that looked like she was trying to discard a small bag of meth.

This supports Plaintiff's case against the officers for more than one reason. First, it indicates that she did not put the meth there, and that therefore the officers probably did. And because of this reason, and because the officers viewed the video before deciding to charge her with felony drug possession, it further indicates that when they decided to charge they knew that she had not put it there.

And it is not merely that the video shows that Manning is not moving around in the backseat that supports the theory that the police planted the evidence. The entire sequence of events that it shows *before* Manning is placed in the police cruiser also supports that theory. If

she had had the bag of meth when they pulled her over, then she would surely have gotten rid of it before being placed in the police car.

There is also the further evidence, which defendant-officers do not deny, that when Manning was threatened with drugs tests and DNA tests, and fingerprints tests, she not only did not make an admission of criminal guilt as the officers had hoped, she *demanded* that they drug test her, that they test the bag for fingerprints. This is like the use of *consciousness of guilt evidence* in a criminal case, except that this would be *consciousness of innocence* evidence. Similarly, this supports Plaintiff's theory in two ways: it indicates that Manning did not put the meth in the car, and that therefore the officers did; and, because the officers themselves were aware of this consciousness of innocence evidence when they chose to charge he with a felony, it further indicates that they knew she was innocent when they chose to charge her.

Defendants may argue that this is simply not strong enough evidence to convince a reasonable jury that the officers fabricated evidence and supported a false prosecution. However, it is exactly the kind of evidence that is used to convict people, under a higher standard of proof, in criminal cases. And that is in fact what the Defendant-officers set in motion in this case when they chose to charge Manning with a drug felony.

Manning will testify that as a result of this drug charge and criminal prosecution she spent more time in jail than she would have. She suffered mental anguish and embarrassment, humiliation, damage to her reputation, loss of housing opportunity for her and her children, loss of earning capacity, and damage to family relations, as a result.

Furthermore, while she was being falsely prosecuted, Tabatha's 5 year-old daughter, Payton Benson, was shot and killed by a stray bullet. The fact that Manning was coping with the loss of her daughter while this false prosecution was taking place *colored* the nature of her suffering. Therefore, it is relevant to the magnitude of her mental suffering as a result of the false criminal prosecution which resulted from the fabrication of the evidence.

Beau Finley was the Plaintiff's court-appointed criminal defense attorney. He will testify to the criminal process that Manning was forced to go through as a result of the tortious actions of the officers. He will also testify to the possible criminal penalties that Manning faced if she were convicted, how he explained this to her, and how it affected her. He will testify to the ordeal that Manning was put through and how long it lasted.

Sharmeen Benson is Marvin Benson's sister. Marvin is the father of Manning's three children and was the father of Payton Benson, as well. Sharmeen's testimony will further explain how the drug charges affected Manning, as well as how it affected her after Payton died.

Defendants had sought to keep any mention of Payton's death out of the trial, on the grounds that it would elicit sympathy and would therefore be prejudicial. But, because jurors are human, it is not entirely possible to separate their sympathy for a plaintiff who is seeking damages, from their evaluation of the mental anguish and suffering that she went through. Nor should it be.

Defendants have also indicated that because Manning was recently interviewed on KETV, a local news station, about her daughter's death, she has "unfortunately" opened the door to a wider discussion during trial of the public reaction to Payton's death. We reject any suggestion that Manning did something improper by participating in the interview. It was recorded and aired on January 15, 2018. She was asked to do the interview because it was four years after Payton's death. She did this to honor her daughter, and to talk about an issue that is important in her community. On the same day, the Omaha Police Department Facebook site also posted a picture of Payton, as well as a story about the four year anniversary of her death. As far as Manning is concerned, the Omaha Police Department also did this to honor her daughter, and to talk about an issue that is important in her community.

Plaintiff will call Alex Hayes as a witness because he was the Chief of Police for the Omaha Police department in 2010, when some of the events took place that are the basis for Manning case against the City of Omaha. As Chief of Police, Hayes had the authority to set police policy. He decided that the Omaha Police department would not try to catch the officers in the act of planting evidence. Municipal liability may be established based on a single decision if "the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. Cincinnati*, 475 U.S. 469, 481 (1986).